UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-80822-Civ-MIDDLEBROOKS
     (06-80094-Cr-MIDDLEBROOKS)
MAGISTRATE JUDGE P. A. WHITE

MICHAEL DENSON,

     Movant,

v.                                        <u>REPORT OF</u>
                                    <u>MAGISTRATE JUDGE</u>

UNITED STATES OF AMERICA,

     Respondent.
_____/


I.  <u>Introduction</u>


    This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, challenging the constitutionality of his convictions and sentences for distributing at least 5 grams of cocaine base entered following a guilty plea in case no. 06-80094-Cr-Middlebrooks.


    This Cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B),(C); S.D.Fla. Local Rule 1(f) governing Magistrate Judges, S.D. Fla. Admin. Order 2003-19; and, Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts.


    The Court has reviewed the movant's motion (Cv-DE#1) with additional supporting legal authorities (Cv-DE#15), the government's response with attached exhibits (Cv-DE#11) to this court's order to show cause, the movant's reply (Cv-DE#14), the Presentence Investigation Report ("PSI"), the court's Statement of Reasons ("SOR"), and all pertinent portions of the underlying

criminal file, including the change of plea (Cr-DE#36/Cv-DE#11:Ex.C) and sentencing transcripts (Cr-DE#37; Cv-DE#11:Ex.D), along with the written plea agreement and factual proffer (Cr-DE#24), and judgments entered in prior convictions (Cv-DE#11:Exs.E-F).[1]

Construing the movant's §2255 motion liberally as afforded *pro se* litigants pursuant to <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), movant raises the following grounds for relief:

1.   He is entitled to vacatur of his sentences in light of the Supreme Court decision in <u>Descamps v. United States</u>,[2] _ _ U.S. ___, 133 S.Ct. 2276 (2013), on the basis that the district court and not the jury made a factual determination that his prior Florida drug convictions, for violation of <u>Fla.Stat</u>. §893.13, constitute controlled substance offenses for purposes of his career offender enhancement. (Cv-DE#1:8).

2.   In light of the Supreme Court's decision in <u>United States v. Burrage</u>, 134 S.Ct. 881, 886-887 (2013), he is entitled to vacatur of his enhanced sentence as a career offender. (Cv-DE#1:11).

---

[1] The court takes judicial notice of this docket. *See* <u>Fed.R.Evid</u>. 201.

[2] In <u>Descamps</u>, the defendant was convicted of possession of a firearm by a convicted felon and sentenced under the ACCA, based in part on his prior burglary conviction under California law. <u>Descamps</u> involved application of the "residual clause" of the ACCA, §924(e)(2)(B)(ii), which defines "violent felony" as "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. §924(e)(2)(B)(ii). The California burglary statute did not include an element of the generic crime of burglary; it did not reuqire that a burglar "enter or remain unlawfully in a building." The Supreme Court held that federal sentencing courts may not apply the "modified categorical approach" (meaning, consulting a limited class of documents, such indictments and jury instructions) to sentencing under ACCA's "residual clause" when the state crime of which the defendant was convicted has a single, indivisible set of elements (meaning, the statute did not contain alternative elements). <u>Descamps</u>, __ U.S. ___, 133 S.Ct. at 2281-82.

In his traverse (Cv-DE#14), as cause and prejudice for failing to raise the issues on direct appeal, movant faults counsel for not pursuing the issues on appeal. (Cv-DE#14:8). A claim is procedurally barred if a movant fails to raise it on appeal. There are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from failure to appeal. Belford v. United States, 975 F.2d 310 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994).

In order to overcome the bar, the movant must show cause for the default and actual prejudice, Wainwright v. Sykes, 433 U.S. 72 (1977), or a fundamental miscarriage of justice, Engle v. Isaac, 456 U.S. 107 (1982). No such showing has been made here. Regardless, a claim of ineffective assistance of appellate counsel may constitute cause for failure to previously raise the issue. United States v. Breckenridge, 93 F.3d 132 (4 Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984); Murray v. Carrier, 477 U.S. 478, 488 (1986). Here, the movant cannot succeed as to grounds presented, because he cannot satisfy the Strickland test, so that those claims which could have been, but were not raised on direct appeal, are thereby barred from review in this collateral proceeding.

3

II.   Factual Background and Procedural History

A. Facts of the Offense[3]

The stipulated factual proffer reveals as follows. In April 2006, the Florida Department of Law Enforcement ("FDLE") and the Drug Enforcement Administration ("DEA") received information from a confidential source ("CS") that the movant was selling crack cocaine from his residence, located at 220 N.W. 6th Avenue in Boynton Beach, Florida. In May 2006, agents arranged to have the CS, accompanied by an undercover agent, purchase crack cocaine from the movant.

Specifically on May 2, 2006, agents met with the CS at a pre-arranged location, confirmed he had no money or contraband with him, at which time the agents provided the undercover agent with $400 to purchase ½-ounce of crack cocaine. The CS, accompanied by the undercover agent, drove to the movant's residence, at which time the CS observed movant standing in the driveway. The CS took the $400 from the undercover agent, exited the car, and approached the movant. After movant asked the CS what he needed, the CS responded that he need "a half." In response, the movant indicated it would cost $400.00. The CS then handed the movant the money. The movant took the money, went inside his home, then came back out a few minutes later, handing the CS a clear plastic bag containing crack cocaine. The CS returned to his car and left the residence. Task Force agents followed the CS and the undercover agent to the same pre-arranged location where they had initially met, at which time the agents took custody of the drugs from the CS and

_____

[3]The facts of this case have been obtained from the factual proffer executed by the movant and made part of the Rule 11 change of plea proceeding. (Cr-DE#24:Factual Proffer; Cr-DE#36:Change of Plea Transcript).

4

undercover agent.

Approximately one week later, on May 11, 2006, the CS and the same undercover agent made a second purchase of crack cocaine from the movant. Both met with agents at a pre-arranged location, where it was confirmed that neither possessed money or contraband. At that time, the undercover agent was again given $400.00 to make a second ½-ounce purchase of crack cocaine. When they arrived at the movant's residence, the movant was in front of his home with an unknown male. The movant motioned for the CS to follow them to the rear of the residence. At that time, the movant removed a bag containing what appeared to be an ounce of crack cocaine from his pant's pocket. However, the CS stated he only wanted to purchase ½-ounce, handing movant the $400.00. The movant instructed the CS to wait in the back, as the movant walked towards the front of the house. Several minutes later, the movant returned to the back of the house with a plastic bag containing a ½-ounce of crack cocaine. Again, the CS and undercover agent took possession of the drugs and left the residence. They were followed by task force agents who then took possession of the drugs. DEA Forensic Chemist Juan Bruna tested the mixture and substance contained in each bag recovered from the CS and concluded that each contained a detectable amount of cocaine base, with a total weight of 22.8 grams.

B.   Indictment, Pre-trial Proceedings, Conviction, Sentencing, and Direct Appeal

On June 8, 2006, the movant was charged by Indictment with two counts of distributing a controlled substance, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C). (Cr-DE#7). On June 15, 2006, a Superseding Indictment was returned charging the movant with two counts of distributing at least 5 grams of cocaine base, in violation of 18 U.S.C. §841(a)(1) and (b)(1)(B). (Cr-DE#15).

Thereafter, the movant entered into a negotiated, written plea agreement, in which he agreed to plead guilty as charged. (Cr-DE#24:1).

The movant stipulated to the factual basis for the plea, as narrated above, which was attached to the plea agreement, acknowledging that it was a true and accurate description of the relevant offense conduct, and as such, constituted the movant's relevant conduct for purposes of U.S.S.G. §1B1.3. (Id.). The movant acknowledged that the court must impose a minimum of 5 years and up to a maximum of 40 years of imprisonment, along with a minimum of 4 years and up to a maximum of life supervised release as to each offense of conviction. (DE#24:Ex.2).

The movant also understood that the sentence would be imposed by the court after considering the advisory guidelines, that would be determined, based in part, upon a PSI, to be prepared after the court accepts movant's plea. (Id.:1-2). Movant acknowledged that the court could depart from the advisory guideline range computed, and while required to consider that range, it was not bound to impose a sentence within the advisory range, but was permitted to tailor the sentence in light of other statutory concerns. (Id.). The movant further acknowledged that any estimate of the probable sentence to be imposed whether from his attorney, the government, or the probation office, was merely a predication, not a promise, and was not binding on the government, the probation office, or the court. (Id.:4-5). As a result, movant understood that the court could impose a sentence up to the statutory maximum authorized by law, and that the movant could not withdraw his plea solely as a result of the sentence imposed. (Id.).

The parties agreed, although not binding on the probation

office or the court, that they would jointly recommend that the court find and conclude that the quantity of cocaine base involved in the offense, for purposes of U.S.S.G. §2D1.1(a)(3), is at least 20 grams, but less than 35 grams. (Id.:2-3). The government further agreed to recommend up to a 3-level reduction to movant's base offense level based on his timely acceptance of responsibility. (Id.:3). The movant was aware that 18 U.S.C. §3742 afforded him the right to appeal the sentence imposed, but he agreed to enter a limited appellate waiver, waiving his rights conferred under §3742 unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the court established at sentencing. (Id.:4).

Review of the record reveals that the district court conducted a careful and meticulous plea colloquy pursuant to Fed.R.Cr.P. 11. (Cr-DE#36; Cv-DE#11:Ex.C). At the commencement of the change of plea proceeding on August 2, 2006, defense counsel advised the court that the movant was having issues regarding which indictment the plea was proceeding under. (Cr-DE#36:2). Defense counsel explained that the initial Indictment, returned on June 8, 2006, had not charged a specific quantity of drugs, while the second Indictment, returned on June 15, 2006, added that the quantity involved as to each count was in excess of 5 grams. (Id.). However, the June 15th Indictment did not indicate on it that it was a Superseding Indictment. (Id.). Defense counsel further stated that, the movant wanted to proceed on the change of plea, predicated on the June 8th Indictment, and did not believe the second Indictment was lawful, despite counsel's representations to the contrary. (Id.). When asked what the government's position was on the matter, the government indicated that it would go forward with the plea as to the second Indictment as previously indicated, but if the movant wanted to challenge the validity of that Indictment, then the

government was ready to go trial, and would be filing an 851
enhancement later that day. (<u>Id</u>.:4-5).

The court then asked the movant whether he wanted to go to
trial or plead guilty, indicating it could not offer him any advice
in that regard. (<u>Id</u>.:5). In order to facilitate the matter, the
government then moved to dismiss the June 8th Indictment, and when
no objection was made by the defense, the court granted the motion,
leaving intact the June 15th, 2006 Indictment. (<u>Id</u>.:6-7). The
Defendant, however, addressed the court directly stating that the
June 15, 2006 amendment and alteration of the Indictment was "a
direct violation" of his "constitutional rights." (<u>Id</u>.:7).

However, after briefly conferring with his attorney, defense
counsel asked the government if it would put on the record that the
government would not be filing an 851 enhancement if the movant
signed the plea agreement that day. (<u>Id</u>.:7). In response, the
government stated, "[W]ell, it is too late anyway. It has to be
filed--" (<u>Id</u>.). Again, a brief recess was had during which defense
counsel further conferred with the movant, and when the proceedings
resumed, defense counsel stated that the movant had signed the plea
agreement and the factual proffer. (<u>Id</u>.). When the court asked
whether the movant was ready to go forward with the plea
proceeding, defense counsel indicated that he was. (<u>Id</u>.:8).

After the movant was given the oath, he understood that if he
made any false statements during the proceedings, it could be used
against him in a prosecution for perjury. (<u>Id</u>.:8).  Movant next
provided educational background information, and then denied ever
being treated for any mental treatment, or addiction to narcotics
or alcohol. (<u>Id</u>.:9). Movant also denied being currently under the
influence of drug or alcohol, and denied taking any type of

medication. (Id.:9).

Movant affirmed that he reviewed the Indictment, and the charges filed against him, and had fully discussed the charges contained therein with counsel. (Id.:10). When asked if he was satisfied with counsel's representation, movant stated that he was. (Id.:10). Before signing the plea agreement, movant indicated he had reviewed and discussed the contents with counsel. (Id.). Movant understood and acknowledged that he was pleading guilty to counts one and two of the indictment, charging him with distributing a controlled substance in violation of federal law. (Id.:10). Next, movant understood that the sentence would be imposed after the court considered the advisory guideline range, and other laws passed by Congress relating to sentencing. (Id.:11).

Movant further recognized that the court was authorized to sentence him to the maximum authorized by law and that he would be unable to withdraw his plea as a result of the sentence imposed. (Id.). In fact, movant understood he faced a minimum of 5 years and up to a maximum of 40 years imprisonment as to each offense, and a term of supervised release of at least 4 years and up to as much as life as to each offense. (Id.:11). Movant also acknowledged that he had agreed with the government to jointly recommend that the quantity of crack cocaine was at least 20 grams, but less than 35 grams. (Id.:12). He understood that the government had agreed to recommend up to a three level reduction to his base offense level based on his timely acceptance of responsibility. (Id.:12). Regarding the limited appellate waiver, movant also confirmed his understanding that he was giving up his right to appeal the sentence in his case, and that he had discussed this with his attorney and was satisfied with his decision in that regard. (Id.:13). When asked if there were any other agreements or promises

9

made by the government beyond what was contained in the plea agreement, defense counsel explained, the government confirmed, and then movant acknowledged that the government would not be filing an 851 enhancement, nor would it be seeking an enhancement based on bullets that were found since there was an issue as to whether or not the movant was in possession of the bullets. (Id.:14-15). He also denied being forced by anyone to plead guilty, and was pleading guilty of his own free will because he was, in fact, guilty. (Id.:15).

Movant also acknowledged that if the court accepted his guilty plea, he would be waiving his constitutional right to a trial by jury, to plead not guilty, to require the government to prove its case beyond a reasonable doubt. (Id.:15). He further acknowledged that by pleading guilty he was giving up his right to testify on his own behalf or call defense witnesses at trial. (Id.:15-16). He further acknowledged that if the plea were accepted, he would be adjudged guilty of a felony and would lose valuable civil rights, including the right to vote, hold office, and own a firearm. (Id.:16). After the government proffered on the record the facts to support the convictions, as narrated in the factual proffer, movant admitted his involvement in the offenses, as set forth by the government and contained in the factual proffer, admitting that it was true and correct. (Id.:17-19).

When asked how movant wished to plead, movant responded, "Guilty." (Id.:19). As a result of the foregoing, the court found the movant was fully competent and capable of entering into an informed plea, that he was aware of the nature of the charge and consequences of the plea, that his plea was knowing and voluntary, and supported by an independent basis in fact as to each of the essential elements of the offenses. (Id.:20). Thereafter, the court

accepted movant's plea, and adjudicated him guilty of the offenses charged in the Indictment. (Id.).

Prior to sentence a PSI was prepared which revealed as follows. The probation officer first grouped the two offenses, and then determined that the amount of drugs involved in the offenses was 20 grams, but less than 35 grams of cocaine base, the base offense level was 28, pursuant to U.S.S.G. §2D1.1(c)(6). (PSI ¶¶16-17). However, the probation officer next determined that, pursuant to U.S.S.G. §4B1.1(a), the movant qualified for an enhanced sentence as a career offender because he was 18 years old at the time of the instant offenses, which are felony controlled substance offenses, and he had at least two prior felony convictions of a controlled substance offense and/or a crime of violence. (PSI ¶23). Specifically, the PSI noted that movant's prior convictions entered in July 1997, in case no. 96-7574CFA02, for sale of cocaine and possession of cocaine with intent to sell, along with his May 2000 resentencing for two counts of robbery with a firearm entered in state court case nos. 96-8727CFA02 and 96-8956CFA02, supported the enhanced sentence. (Id.). Further, since the statutory maximum for the offenses of conviction was 40 years imprisonment, pursuant to U.S.S.G. §4B1.1, the base offense level was set at 34. (PSI ¶23). Three levels were then deducted from the base offense level, based on movant's timely acceptance of responsibility, resulting in a total adjusted base offense level 31. (PSI ¶¶24-26).

Next, the probation officer determined movant had a total of 11 criminal history points, resulting in a criminal history category V. (PSI ¶41). However, because the movant qualified as a career offender, and under U.S.S.G. §4B1.1, a career offender's criminal history category is always VI, the movant's criminal history category was set at VI. (PSI ¶42). Based on a total offense

level 31 and a criminal history category VI, movant's total
advisory guideline exposure was 188 months at the low end, and on
the high end, up to a term of 235 months imprisonment. (PSI ¶85).
Statutorily, movant was facing a minimum of 5 years and up to a
maximum of 40 years imprisonment as to each offense of conviction
for violating 21 U.S.C. §841(b)(1)(B). (PSI ¶84).

Prior to sentencing, movant filed a sentencing memorandum,
seeking both a downward departure from the advisory guideline
range, pursuant to United States v. Booker, 543 U.S. 220, 229
(2004). (Cv-DE#27). On October 11, 2006, movant appeared for
sentencing. (Cr-DE#38; Cv-DE#11:Ex.D). At that time, the court
acknowledged the movant's sentencing memorandum, stating that it
was his understanding the movant was requesting that he depart
below the advisory guideline range. (Id.). Counsel then explained
that the departure was warranted given the nature and circumstances
regarding the movant's prior criminal history, and requested that
the court depart below and sentence movant to a total term of 100
months in prison, which is "a reasonable sentence," and would put
the movant "in prison until he's 40 years old." (Id.:9).
Thereafter, the court colloquied the movant, inquiring whether he
had, in fact, pled guilty to two state court robbery offenses, to
which the movant responded that he had. (Id.:13). Next, the
government addressed the court, arguing that movant had a
significant history which suggested that movant was involved in the
drug trade, and that as part of the plea negotiations in this case,
the government had agreed not to file an 851 enhancement, which
would have increased his statutory sentencing range to a minimum of
10 and up to life imprisonment, and his advisory guideline range
would have increased to a minimum of 360 at the low end and up to
life imprisonment at the high end, rather than the current 5 to 40
years imprisonment range he currently faced. (Id.:20-21).

12

After hearing from the movant's sister, and the movant, the court indicated it had considered the statements of all parties, the PSI containing the advisory guidelines, along with the statutory factors. (Id.:24). The court then indicated it was not prepared to discount the movant's criminal history, especially given that he had previously pleaded guilty to two robbery offenses with a firearm, and had a history of drug dealing. (Id.:24-25). As a result, the court denied movant's request for a downward variance below the low end of the guideline range. (Id.:25). As a result, the court sentenced the movant to two concurrent terms of 188 months imprisonment, to be followed by a total of 5 years supervised release. (Id.; Cr-DE#30). The judgment was entered by the Clerk on October 18, 2006. (Cr-DE#30).

On October 20, 2006, the movant filed a timely *pro se* notice of appeal, which was assigned appellate court, case no. 06-15721-G. (Cr-DE#s31,33). On **January 3, 2007,** the Eleventh Circuit Court of Appeals dismissed movant's appeal for lack of prosecution, on the basis that the movant had failed to pay the $455 docketing and filing fees. (Cr-DE#33).

Consequently, movant's conviction became final on **Tuesday, April 3, 2007,** ninety day after his direct appeal was dismissed, when time expired for seeking certiorari review. See Clay v. United States, 537 U.S. 522 (2003); see also, Tovar v. Sec'y, Dep't of Corr's, 2014 WL 298914, 2 (M.D. Fla. Jan. 28, 2014)(conviction final 90 days after time expired to seek certiorari review with the U.S. Supreme Court following a dismissed direct appeal); United States v. Gentry, 432 F.3d 600, 604 n.2 (5th Cir. 2005)(conviction became final ninety (90) days after appellate court dismissed direct appeal, or, in other words, upon expiration of the time period for filing for a writ of certiorari; appeal dismissed for

want of prosecution); <u>United States v. Sosa</u>, 364 F.3d 507, 509 (4th Cir. 2004)(conviction became "final," triggering one-year limitations period applicable to motion to vacate, ninety (90) days after court of appeals dismissed defendant's direct appeal, where defendant did not file petition for writ of certiorari in the United States Supreme Court; basis for dismissal not stated),[4] and <u>Vroman v. Brigano</u>, 346 F.3d 598, 601 (6th Cir. 2003)(conviction became final ninety (90) days after the Ohio Supreme Court dismissed petitioner's direct appeal; basis for dismissal not stated).

Since movant's judgment became final at the earliest on **April 3, 2007,** the movant had one year from the time his conviction became final, or no later than **April 3, 2008,** within which to timely file this §2255 motion. <u>See</u> <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986);  <u>See also</u> <u>Downs v. McNeil</u>, 520 F.3d 1311, 1318 (11th Cir. 2008)(<u>citing</u>  <u>Ferreira v. Sec'y, Dep't of Corr's</u>, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)(suggesting that the limitations period should be calculated according to the "anniversary method," under which the limitations period expires on the anniversary of the date it began to run); <u>accord</u> <u>United States v. Hurst</u>, 322 F.3d 1256, 1260-61 (10th Cir. 2003); <u>United States v. Marcello</u>, 212 F.3d 1005, 1008-09 (7th Cir. 2000)). Applying the anniversary method to this case means movant's limitations period would expire on **April 3, 2008.**

The federal limitations period ran unchecked for over **7 years**

---

[4]Although the basis for dismissal was not expressly stated in the <u>Sosa</u> opinion, at least one other court has attributed the dismissal to the defendant, rather than, for instance, a procedural defect or a failure to prosecute which resulted in the court's *sua sponte* dismissal of the appeal. <u>Lehet v. United States</u>, 2007 WL 186801, at *1 (M.D.Fla. Jan. 22, 2007) (citing <u>Sosa</u> for the proposition that "when defendant files but then dismisses direct appeal, conviction is deemed final ninety days after dismissal.").

before he returned to this court, filing the instant motion to vacate on **June 16, 2014,** when he signed the motion and handed it to prison authorities for mailing.[5] (Cv-DE#1).

### III.  Standard of Review

Pursuant to 28 U.S.C. §2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255. In determining whether to vacate a movant's sentence, a district court must first determine whether a movant's claim is cognizable under Section 2255. See Lynn v. United States, 365 F.3d 1225, 1232-33 (11th Cir. 2004)(stating that a determination of whether a claimed error is cognizable in a Section 2255 proceeding is a "threshold inquiry"), *cert. den'd*, 543 U.S. 891, 125 S. Ct. 167, 160 L. Ed. 2d 154 (2004). It is well-established that a Section 2255 motion may not be a substitute for a direct appeal. Id. at 1232 (*citing* United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)).

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's

---

[5]"Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); see Fed.R.App. 4(c)(1)("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."). Unless there is evidence to the contrary, like prison logs or other records, a prisoner's motion is deemed delivered to prison authorities on the day he signed it. See Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001); Adams v. United States, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal." <u>Id.</u> (<i>citing</i> <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under Section 2255. This is because "[r]elief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." <u>Id.</u> at 1232-33 (<i>quoting</i> <u>Richards v. United States</u>, 83 F.2d 965, 966 (11th Cir. 1988)(internal quotations omitted)). If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. §2255. To obtain this relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." <u>Frady</u>, 456 U.S. at 166, 102 S.Ct. at 1584 (rejecting the plain error standard as not sufficiently deferential to a final judgment).

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). <u>See also</u> <u>Aron v. United States</u>, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted

by the record" or "patently frivolous"). As indicated by the discussion below, the motion and the files and records of the case conclusively show that movant is entitled to no relief, therefore, no evidentiary hearing is warranted.

In addition, the party challenging the sentence has the burden of showing that it is unreasonable in light of the record and the §3553(a) factors. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). The Eleventh Circuit recognizes "that there is a range of reasonable sentences from which the district court may choose," and ordinarily expect a sentence within the defendant's advisory guideline range to be reasonable. Id.

IV. Discussion

A. Timeliness

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") created a limitation for a motion to vacate. Pursuant to 28 U.S.C. §2255(f), as amended April 24, 1996, a one year period of limitations applies to a motion under the section. The one year period runs from the latest of:

> (1) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (2) The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant is prevented from filing by such governmental action;
>
> (3) The date on which the constitutional right asserted was initially recognized

17

> by the Supreme Court, if that right has
> been newly recognized by the Supreme
> Court and made retroactively applicable
> to cases on collateral review; or
>
> (4)  The date on which the facts supporting
>      the claim or claims could have been
>      discovered through the exercise of due
>      diligence.

See 28 U.S.C. §2255(f); see also, Pruitt v. United States, 274 F.3d 1315, 1317 (11th Cir. 2001). The burden of demonstrating that the AEDPA's one-year limitation period was sufficiently tolled, whether statutorily or equitably, rests with the movant. See e.g., Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005); Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002); Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002).

As will be recalled, movant's conviction became final on **April 3, 2007,** ninety days after dismissal of his direct appeal, when time expired for seeking certiorari review therefrom with the U.S. Supreme Court. For purposes of the AEDPA's one-year federal limitations period, the movant was required to file this motion to vacate within one year from the time the judgment became final, or no later than **April 3, 2008.** Pursuant to the mailbox rule, movant's motion was not filed until **June 16, 2014,** over **7 years** after movant's conviction became final, and long after the one-year federal limitations expired. Consequently, movant is not entitled to statutory tolling of the limitations period.

Movant argues that his motion to vacate is nevertheless timely under various exceptions to AEDPA's statute of limitations. First, he argues that the instant motion to vacate should nevertheless be considered timely filed based on Descamps v. United States, ___ U.S. ___, 133 S.Ct. 2276 (2013) and Burrage v. United States, 134

18

S.Ct. 881 (2014). Neither of these cases relieves movant from the AEDPA's one-year statute of limitations.

_Descamps_ follows a line of Supreme Court decisions establishing the rules for determining when a defendant's prior conviction qualifies as one of the enumerated predicate offenses set forth in the Armed Career Criminal Act, 18 U.S.C. §924 ("ACCA"). In _Taylor v. United States_, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court adopted a "categorical approach," requiring sentencing courts to look at the statutory elements of the defendant's prior offenses, not the facts underlying those convictions. See _Descamps_, 133 S.Ct. At 2283-84 (discussing _Taylor_). The Court's _Taylor_ decision also developed the "modified categorical approach," which allows sentencing courts to look beyond the statutory elements to "the charging paper and jury instructions" used in a case where the defendant's prior conviction is for violating a "divisible statute." _Descamps_, 133 S.Ct. at 2282-85 (discussing _Taylor_ and _Shepard v. United States_, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)). In _Descamps_, the Supreme Court determined that the California burglary statute is nondivisible and therefore the district court could not apply the modified categorical approach to the defendant's California burglary conviction. _Id._ at 2285-86. In _Burrage_, the Supreme Court held that, where the use of a drug distributed by a defendant is not an independently sufficient cause of the victim's death or serious bodily injury, the defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. §841(b)(1)(C) unless the use is a "but-for" cause of the death or injury.

Neither _Descamps_ nor _Burrage_ is retroactively applicable on collateral review. See _Tyler v. Cain_, 533 U.S. 656, 663 (2001) (noting that the Supreme Court is the only entity that can make a

new rule retroactive); See Nipper v. Warden, FCC Coleman-Medium, ___ F.3d ___, 2015 WL 106855, 2 (11th Cir. 2015); In re: Carlos Alvarez, No. 14-10661-D (11th Cir. Mar. 6, 2014)(court denied petitioner's application to file successive §2255 motion finding Burrage is a statutory interpretation case and the Supreme Court did not make it applicable on collateral review); Jeanty v. Warden, FCI-Miami, 757 F.3d 1283, 1285-86 (11th Cir. 2014)(Alleyne is not retroactive); United States v. Bourlier, 2014 WL 6750674 (N.D. Fla. Dec. 1, 2014)(no support for Burrage's retroactivity); e.g., Herrea v. Warden, FCC Coleman-USP I, ___ Fed.Appx. ____, 2015 WL 77404 (11th Cir. Jan. 7, 2015)(unpublished) (petitioner not entitled to habeas relief as he cannot open §2241 portal since none of the cases relied upon, including Descamps and Burrage are retroactively applicable to cases on collateral review); Wilson v. Warden, FCC Coleman, ___ Fed.Appx. ____, 2014 WL 4345685, at *3 (11th Cir. Sept. 3, 2014) (unpublished); Alvarez v. Hastings, 2014 WL 4385703, at *1 (S.D. Ga. Sept. 5, 2014); De La Cruz v. Quintana, 2014 WL 1883707, at *6 (E.D. Ky. May 1, 2014)(noting there was no authority making Burrage retroactively applicable); Taylor v. Cross, 2014 WL 1256371, at *3 (S.D. Ill. Mar. 26, 2014)(Burrage has not been found to apply retroactively).

Movant also relies upon the Eleventh Circuit's 2013 opinion in Donawa v. United States Attn'y Gen., 735 F.3d 1275 (11th Cir. 2013) to suggest his motion was timely filed within a year of that decision. Donawa does not extend the one-year limitations period under Section 2255(f)(3) because it is not a United States Supreme Court case. Consequently, since Burrage and Descamps, are Supreme Court cases which do not apply retroactively to cases on collateral review, and Donawa is not a Supreme Court case and thus not retroactively applicable, movant cannot satisfy Section 2255(f)(3).

It should be noted that <u>Burrage</u> and <u>Descamps</u> both rely on <u>Alleyne</u>,[6] an extension of <u>Apprendi</u>,[7] which is not retroactively applicable to cases on collateral review. <u>See</u> <u>United States v. Harris</u>, 741 F.3d 1245, 1250 n.3 (11th Cir. Jan. 2014); <u>Chester v. Warden</u>, 2014 WL 104150 at *4 (11th Cir. Jan. 13, 2014).

Next, to the extent movant appears to rely on the exception for newly discovered evidence contained in Section 2255(f)(4), that argument is also unavailing. He alleges that he recently ascertained that error occurred during the change of plea and at sentencing, as discussed in the foregoing opinions, and is therefore entitled to vacatur of his enhanced sentence. Movant, however, fails to explain how he could not have learned of the alleged sentencing error sooner with the use of due diligence. He was present at the change of plea proceeding and at sentencing. During both proceeding, the nature of the charges, the type of drugs involved and the quantity of drugs were all discussed. The movant agreed to be held accountable for an amount of cocaine base greater than 20 grams, but less than 35 grams. (Cr-DE#24:3-Plea Agreement/Factual Proffer). By the conclusion of sentencing, movant was aware that his sentence had been enhanced based on his status

---

[6]<u>See</u> <u>Alleyne v. United States</u>, 570 U.S. __, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). In <u>Alleyne</u>, the Supreme Court overruled its prior precedent in <u>Harris v. United States</u>, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). <u>Harris</u> had held that "brandishing" a firearm for purposes of 18 U.S.C. §924(c)(1)(A)(ii)—which triggered an increased mandatory minimum sentence—was a sentencing factor, rather than an element of the crime, which a judge could find at sentencing without violating the defendant's Sixth Amendment rights. <u>Harris</u>, 536 U.S. at 556, 568, 112 S.Ct. at 2414, 2420. In <u>Alleyne</u>, the Supreme Court concluded that "<u>Harris</u> drew a distinction between facts that increase the statutory maximum and facts that increase only the mandatory minimum," but "this distinction is inconsistent with our decision in <u>Apprendi v. New Jersey</u>, 530 U.S. 446, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and with the original meaning of the Sixth Amendment." <u>Alleyne</u>, 570 U.S. at ___, 133 S.Ct. at 2155. Thus, the Supreme Court in <u>Alleyne</u> held that any fact that increases a defendant's mandatory minimum sentence is an element of the crime that must be found by a jury. <u>See</u> <u>Id</u>. at ___, 133 S.Ct. at 2155.

[7] <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000).

as a career offender. He does not establish that any error could not have been discovered earlier with the exercise of due diligence. Accordingly, Section 2255(f)(4) does not except him from AEDPA's statute of limitations.

The instant motion to vacate is untimely, and movant's belated realization of the purported legal significance of the facts does not delay commencement of the limitations period. As indicated above, movant appears to be improperly confusing his knowledge of the factual predicate of his claims with the time permitted for gathering evidence and/or additional legal support thereof. See Flanagan v. Johnson, 154 F.3d 196, 198-99 (5th Cir. 1998). See also Worthen v. Kaiser, 952 F.2d 1266, 1268-68 (10th Cir. 1992)(holding that habeas petitioner's failure to discover the legal significance of the operative facts does not constitute cause). Movant has also not demonstrated that any unconstitutional government action prevented him from timely filing the instant §2255. See 28 U.S.C. §2255(f)(2).

Although movant's section 2255 motion is clearly untimely under §2255(f)(1)-(3), this does not, however, end the inquiry. In certain instances, the limitation period may run from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. §2255(f)(4). Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000). See also Shannon v. Newland, 410 F.3d 1083, 1089 (9th Cir. 2005)(holding that an unrelated state court decision which established an abstract proposition of law helpful to petitioner's habeas claim did not constitute a "factual predicate" for purposes of triggering one-year period of limitations). In other words, the discovery of a new legal theory does not constitute a discoverable "fact" for purposes of §2255(f)(4). See Barreto-Barreto, 551 F.3d

at 99 n.4 (finding that discovery of new legal theory does not
constitute discoverable "fact" for purposes of §2255(f)(4)); <u>Owens
v. Boyd</u>, 235 F.3d at 359.

Here, the movant does not assert new facts to establish his
claim. Rather, movant suggests that the legal landscape regarding
the issue has changed in light of the Supreme Court's recent
decisions in <u>Descamps</u> and <u>Burrage</u>. However, the discovery of a new
legal theory does not constitute a discoverable fact for purposes
of §2255(f).

Movant is also not entitled to equitable tolling of the
limitations period. The United States Supreme Court has held that
the one-year limitations period is subject to equitable tolling in
appropriate cases. <u>See</u> <u>Holland v. Florida</u>, 560 U.S. ___, 130 S.Ct.
2549 (2010). The burden is on the petitioner to demonstrate that he
is entitled to the extraordinary relief of equitable tolling.
<u>Holland</u>, 130 S.Ct. at 2562. <u>See also</u> <u>Outler v. United States</u>, 485
F.3d 1273, 1280 (11th Cir. 2007). A litigant seeking equitable
tolling bears the burden of establishing two elements: (1) that
he/she has been pursuing his rights diligently, *and* (2) that some
extraordinary circumstance stood in his/her way. <u>Pace v.
DiGuglielmo</u>, 544 U.S. 408, 418-19 (2005)(<u>citing</u> <u>Irwin v. Department
of Veterans Affairs</u>, 498 U.S. 89, 96 (1990). <u>See also</u> <u>Diaz v.
Secretary for Dept. of Corr.</u>, 362 F.3d 698, 702 (11th Cir.
2004)(characterizing the equitable-tolling standard as a two-part
test, stating that "equitable tolling is available only if a
petitioner establishes *both* extraordinary circumstances and due
diligence."(emphasis supplied)).

As discussed previously, movant does not provide any
explanation why he waited over **six years** to file his first §2255

23

motion. Rather, he concedes that legal precedent was unavailable to challenge his sentencing enhancements until the two Supreme Court decisions, <u>Descamps</u> and <u>Burrage</u>, were decided in 2013. However, as noted above, these decisions are not retroactively applicable to cases on collateral review. Consequently, the filing of this federal petition remains time-barred.

Next, to the extent movant suggests that he is an unskilled layperson who has limited knowledge of the law and is, therefore, entitled to liberal treatment, this argument also warrants no relief.[8] Mere ignorance of the law or lack of knowledge of filing deadlines does not justify equitable tolling of AEDPA's limitation period. See <u>Johnson v. United States</u>, 544 U.S. 295, 311, 125 S.Ct. 1571, 1582 (2005)(stating that "the Court has never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness."). <u>See also</u> <u>Rivers v. United States</u>, 416 F.3d at 1323 (holding that while movant's lack of education may have delayed his efforts to vacate his state conviction, his procedural ignorance is not an excuse for prolonged inattention when promptness is required); <u>Carrasco v. United States</u>, 2011 WL 1743318, *2-3 (W.D.Tex. 2011)(finding that movant's claim that he just learned of <u>Padilla</u> decision did not warrant equitable tolling, although movant was incarcerated and was proceeding without counsel, because ignorance of the law does not excuse failure to timely file §2255 motion); <u>Felder v. Johnson</u>, 204 F.3d 168, 172-73 & n. 10 (5th Cir.

---

[8]As correctly maintained by Movant, <u>pro se</u> filings are subject to less stringent pleading requirements, <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976), and should be liberally construed with a measure of tolerance. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1972). <u>See also</u> <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 791 (11th Cir. 2005); <u>Diaz v. United States</u>, 930 F.2d 832, 834 (11th Cir. 1991). However, contrary to Movant's apparent belief, the policy of liberal construction for <u>pro se</u> litigants' pleadings does not extend to a "liberal construction" of the one-year limitations period.

2000)(citing cases), <u>cert</u>. <u>denied</u>, 531 U.S. 1035 (2000)(holding that ignorance of law and pro se status are insufficient to toll statute of limitations); <u>Turner v. Johnson</u>, 177 F.3d 390, 392 (5th Cir. 1999); <u>United States v. Flores</u>, 981 F.2d 231, 236 (5th Cir.1993)(holding pro se status, illiteracy, deafness, and lack of legal training are not external factors excusing abuse of the writ); <u>Hughes v. Idaho State Bd. of Corrections</u>, 800 F.2d 905, 909 (9th Cir. 1986)(illiteracy of pro se petitioner not sufficient cause to avoid procedural bar); <u>Barrow v. New Orleans S.S. Ass'n</u>, 932 F.2d 473, 478 (5th Cir. 1991)(holding equitable tolling of limitations period within the Age Discrimination in Employment Act was not warranted by plaintiff's unfamiliarity with legal process, his lack of representation, or his ignorance of his legal rights).

Under the totality of the circumstances present here, the movant's dilatory behavior cannot qualify him for equitable tolling. As a result of movant's failure to diligently pursue his rights, he has failed to demonstrate that he qualifies for equitable or statutory tolling. Consequently, this §2255 motion should be dismissed as time-barred.

Alternatively, movant argues that he is actually innocent of the career offender sentence, warranting review on the merits of his sentence challenges. He states that his motion to vacate should be considered timely and on the merits, because barring it would constitute a fundamental miscarriage of justice. Actual innocence may serve to overcome the procedural bar caused by the untimely filing of a Section 2255 motion. <u>See</u> <u>McQuiggin v. Perkins</u>, ___ U.S. ___, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013). However, "actual innocence" does not apply to a career criminal designation. This is so, because that designation is not a separate substantive offense for which a defendant stands convicted. <u>See, e.g.</u>, <u>Gilbert v.</u>

25

United States, 640 F.3d 1293, 1320 (11th Cir. 2011)("A defendant
who is convicted and then has the §4B1.1 career offender
enhancement ... applied in the calculation of his sentence has not
been convicted of being guilty of the enhancement.")("Gilbert II").
See also Wiwo v. Medina, 491 Fed.Appx. 482, *1 (5th 2012)("A claim
of actual innocence of a career offender enhancement is not a claim
of actual innocence of the crime of conviction...").

　　　Moreover, movant does not argue that he is factually innocent
of the charges for which he pleaded guilty in the underlying
federal criminal case.[9] See McKay v. United States, 657 F.3d 1190,
1199-1200 (11th Cir. 2011), cert. denied, ___ U.S. ___, 133 S.Ct.
112, 184 L.Ed.2d 52 (2012). To the extent he suggests he is
factually innocent of the underlying predicate offenses, by his own
admissions at sentencing and during the change of plea proceedings,
movant agreed that he entered into a negotiated plea agreement as
to the state prior, predicate robbery offenses, rather than
proceeding to a retrial. Even if it was in his best interest to do
so at the time, he has not demonstrated that those convictions were
unlawfully entered or have been otherwise vacated. Under the
totality of the circumstances present here, movant cannot satisfy
the actual innocence exception to excuse the procedural bar caused
by his failure to timely file his motion to vacate, since he has
not established that his claims are based on a retroactively
applicable Supreme Court decision establishing that he was
convicted of a nonexistent offense.

　　　In sum, none of the circumstances of this case excuse movant's

_____

[9]The actual innocence exception is a narrow exception that requires
factual, not merely legal, innocence. Bousley v. United States, 523 U.S. 614,
623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). See also McKay v. United States, 657
F.3d 1190, 1197-98 (11th Cir. 2011), cert. denied, ___ U.S. ___, 133 S.Ct. 112,
184 L.Ed.2d 52 (2012).

failure to timely pursue a §2255 motion to vacate. Contrary to movant's belief, imposition of the career offender sentence in this case did not result in a miscarriage of justice. And, the fact that the motion has been filed over six years late, but within a year of the Supreme Court decisions relied upon here, does not render dismissal as time-barred inappropriate. As the Supreme Court observed in United States v. Locke, 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985):

> The notion that a filing deadline can be complied with by filing sometime after the deadline falls due is, to say the least, a surprising notion, and it is a notion without limiting principle. If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline; yet regardless of where the cutoff line is set, some individuals will always fall just on the other side of it. Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced.... *A filing deadline cannot be complied with, substantially or otherwise, by filing late-even by one day.*

(emphasis added). Locke, 471 U.S. at 100-01. Similarly, in its order dismissing a federal habeas corpus petition as untimely filed, the Northern District of Florida aptly stated:

> [A]lthough application of the statute of limitations might appear harsh, that is always the case with statutes of limitation. By definition, statutes of limitation preclude presentation of a plaintiff's or petitioner's claims on the merits. Harsh as they are, statutes of limitation serve important interests. And harsh as it might seem, statutes of limitation establish hard and fast deadlines, subject to tolling under various circumstances but not subject to being held inapplicable simply because a plaintiff or petitioner came close. *The*

27

> *law is and always has been that a statute of limitations*
> *creates a definitive deadline; a complaint or petition*
> *filed one day late (or six days late as in the case at*
> *bar) is untimely, just as if a year late.*

(emphasis added). <u>See</u> <u>Turner v. Singletary</u>, 46 F.Supp.2d 1238, 1240
(N.D.Fla. 1999).

## B.   <u>Merits</u>

In **claims 1 and 2,** movant asserts that he is entitled to
vacatur of his convictions and sentences based on the Supreme
Court's recent decisions in <u>Descamps</u> and <u>Burrage</u> on the basis that
the district court made factual determinations that were neither
charged in the Indictment, nor proven beyond a reasonable doubt by
a jury, nor did he agree to it as part of the change of plea
proceeding. He suggests he was unaware that he was facing an
enhanced sentence at the change of plea proceeding. As narrated
previously in this Report, movant was well aware that, in exchange
for the negotiated plea, the government waived filing an 851
enhancement, and the issue of the amount of and type of drugs was
explored at the change of plea and then again at sentencing. Movant
alleges that his guideline range was determined and drove his
ultimate sentence upward based on facts which were neither charged
in the indictment nor proved beyond a reasonable doubt by the jury
at trial. Therefore, his sentence enhancement violated <u>Descamps</u> and
<u>Burrage</u>.

As previously noted, <u>Descamps</u> and <u>Burrage</u> are not
retroactively applicable to cases on collateral review.
Nevertheless, it bears noting that even if counsel was deficient
for failing to request a downward departure at sentencing for the

28

reasons set forth by the movant in this collateral proceeding, and then failed to raise the issue on appeal, no showing has been made that the court would have sentenced the petitioner without the enhancement. As previously discussed, the court specifically found he qualified for a career offender enhancement. Movant here has not met his burden of demonstrating that further argument in this regard would have succeeded, much less that his sentence was unreasonable in light of the record before this court.

On the merits, the claims warrant no relief. Pursuant to U.S.S.G. §4B1.1, a defendant qualifies as a career offender if (1) he is at least 18 years old, (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense, and (3) he has at least two prior felony convictions of either a crime of violence or a controlled substance offense.[10] See U.S.S.G. §4B1.1. The first two provisions of the guidelines are not disputed and thus not at issue here. Regardless, the offenses of conviction here are controlled substance offenses, and the movant was more than eighteen years old at the time of its commission. Thus, the first two requirements for the enhancement are met.

Next, under U.S.S.G. §4A1.2(e), a prior conviction only counts toward career offender status under U.S.S.G. §4B1.1(a) if: the sentence exceeded one year and one month, and was imposed within fifteen years of commencement of the instant offense; or the

---

[10]Further, Application Note 3 to U.S.S.G. §4B1.2 provides that the provisions of U.S.S.G. §4A1.2 are applicable to determining what constitutes a prior conviction. Pursuant to U.S.S.G. §4A1.2(e)(1), "[A]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also counted are any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period." See U.S.S.G. §4A1.2(e)(1); (emphasis added).

sentence exceeded one year and one month, whenever imposed, and resulted in defendant being incarcerated within fifteen years of commencement of the instant offense. Additionally, U.S.S.G. §4A1.2(e)(2) provides the applicable time period, stating in pertinent part that any prior sentence that does not exceed one year and one month imprisonment will be counted if it was committed within ten years of the defendant's commencement of the instant offense of conviction.

Movant commenced the conduct that comprised the instant offense in April 2006. Ten years prior to that date is April 1996. The movant's prior convictions in case nos. 96-7475-CFA02, as listed in paragraph 36 of the PSI, was committed in July 1996, within ten years of the defendant's commencement of the instant offenses. Further, his convictions for robbery with a firearm, entered in case nos. 96-8727-CFA02 and 96-8958-CFA02, as listed in paragraphs 37 and 38 of the PSI, were committed on July 17, 1996, also within 10 years of commencement of the instant offenses. Thus, the convictions are not stale and could be considered in determining his status as a career offender. <u>See</u> U.S.S.G. §4A1.2(e)(2).

The issue, therefore, is whether the movant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. The PSI reflects movant pled guilty and was sentenced in Palm Beach County Circuit Court, case no. 96-7574-CFA02, with sale of cocaine, in violation of <u>Fla.Stat.</u> §893.13(1)(a)and possession with intent to sell cocaine, in violation of <u>Fla.Stat</u>. §893.13(1). (PSI ¶36; Cv-DE#11:Ex.F-Judgment). According to the movant, a conviction under <u>Fla.Stat</u>. §893.13(1) does not constitute a serious drug offense for purpose of the career offender enhancement because Florida law broadens the

30

generic federal definition of a controlled substance. (DE#s1,15). In 1996, at the time of his state court offenses, <u>Fla.Stat</u>. 893.13(1)(a) made it unlawful to "sell, manufacture, or deliver or possess with intent to sell, manufacture, or deliver, a controlled substance." <u>Fla.Stat</u>. §893.13(1)(a).

For purposes of the career offender enhancement, the guidelines defines a "serious drug offense" as "an offense under state law ..., for which a maximum term of imprisonment of ten years or more is prescribed by law," <u>See</u> 18 U.S.C. §924(e)(2)(A)(ii); <u>see also</u>, <u>McNeil v. United States</u>, ___ U.S. ___, 131 S.Ct. 2218, 180 L.Ed.2d 35, 79 U.S.L.W. 4419 (2011). In <u>McNeil</u>, the Supreme Court recently found:

> ...that a federal sentencing court must determine whether 'an offense under State law' is a 'serious drug offense' by consulting the 'maximum term of imprisonment' applicable to a defendant's previous drug offense at the time of the defendant's state conviction for that offense. §924(e)(2)(A)(ii).

<u>Id</u>. at 2224.

In <u>United States v. James</u>, 430 F.3d 1150, 1154 (11th Cir. 2005), the Eleventh Circuit explained, as follows:

> Florida ... has a three-tiered scheme for punishing drug-related offenses. Under Florida law, those three tiers are the following: (1) possession of any amount of a controlled substance, <u>Fla.Stat.</u> §893.13(6)(a); (2) possession with intent to distribute a controlled substance, §893.13(1)(a); and (3) trafficking in cocaine by possession of 28 grams or more of the drug, §893.135(1)(b). Under this third tier, trafficking in cocaine is further delineated according to the amount of drugs that the defendant possessed, and the sentence imposed increases accordingly.

McNeill, supra, dictates the result here. The facts set forth in the PSI, at paragraph 36, as well as, the copy of the judgment provided by the government, confirms that movant was convicted of violating Fla.Stat. §893.13(1)(A)1. That statute reveals that a violation of Fla.Stat. §893.13(1)(a)1, is a second degree felony, subject to a maximum fifteen-year term of imprisonment, without regard to the weight of the drugs. See Fla.Stat. §775.082.

The district court did not err in determining that the movant had two prior convictions that qualified as serious drug offenses for purposes of the career offender enhancement. In fact, the Eleventh Circuit has held that a violation of Fla.Stat. §893.13(1)(A)1 is a serious drug offense for purpose of the career offender enhancement. See United States v. Burton, 2014 WL 1800822 (11th Cir. May 7, 2014)(unpublished) (A violation of Fla.Stat. §893.13(1)(A)1 falls squarely within the career offender guideline definition of a controlled substance offense); United States v. Smith, 775 F.3d 1262, 1268 (11th Cir. 2014); United States v. Home, 206 Fed.Appx. 942, 944 n.3 (11th Cir. 2006) (sale or delivery of cocaine is a serious drug offense for purposes of enhanced sentence as an armed career criminal); see also, United States. v. Gibson, 434 F.3d 1234, 1248-49 (11th Cir. 2006)(same); United States v. Govan, 293 F.3d 1248, 1250 (11th Cir. 2002); United States v. Johnson, 515 Fed.Appx. 844, 847 (11th Cir.2013) (delivery of a controlled substance qualifies as a serious drug offense under the ACCA).

This is so because the offenses involves the delivery of cocaine, not the act of purchasing drugs. The Eleventh Circuit has consistently held that a conviction for the delivery of cocaine is a serious drug offense. Therefore, movant cannot prevail on his

arguments that he did not qualify for an enhanced sentence as a career offender on the basis that the prior state court conviction for sale of cocaine or possession of cocaine with intent to sell did not qualify as a predicate offense for purposes of his status as a career offender.

Next, the movant argues that the prior robbery with a firearm convictions cannot be used as predicate offenses to support his career offender enhancement. The U.S. Sentencing Guidelines, §4B1.2(a) defines a "crime of violence" as any offense under state or federal law, punishable by imprisonment for a term exceeding one year, that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling ... or otherwise involves conduct that presents a serious potential risk of physical injury to another." The Commentary to U.S.S.G. §4B1.2 states that a "'[c]rime of violence' includes ... robbery...."

Thus, the movant's prior convictions for robbery with a firearm are crimes of violence as they are specifically enumerated under the Guidelines. The case law supports this conclusion. See United States v. Lockley, 632 F.3d 1238 (11th Cir. 2011) (holding that Florida attempted robbery is an enumerated offense for career offender purposes and satisfies the definition of "crime of violence" under U.S.S.G. §4B1.2); United States v. Shuck, 481 Fed. Appx. 600 (11th Cir. 2012) (finding that bank robbery by intimidation under 18 U.S.C. §2113(a) is a crime of violence for career offender enhancement).

The state court robbery convictions also qualify as crimes of violence because they "ha[ve] as an element of the use, attempted use, or threatened use of physical force against the person of

another." See U.S.S.G. §4B1.2(a)(1). Thus, the movant's two Florida state court convictions for robbery with a firearm, entered in case nos. 96-8727-CFA02 and 96-8956-CFA02, constitute crimes of violence for purpose of the career offender enhancement.

To the extent the movant appears to suggest here, as he did at the time of sentencing, that he was actually innocent of the two prior state robbery convictions, but entered into pleas as to those offenses, rather than proceed with a retrial, such an argument is also unavailing.  He did not show at that time nor now that those Florida robbery convictions have been vacated or were otherwise entered unlawfully. The law is clear that once the movant successfully attacks in the state forum his prior state convictions used to determine his criminal history, at that time he may then seek to reopen and reduce the federal sentence. See United States v. Walker, 198 F.3d 811, 813 (11th Cir. 1999). It is also well settled that collateral attacks on prior convictions are generally prohibited in federal sentencing proceedings, and may be raised only when the conviction was obtained in violation of the defendant's right to counsel. United States v. Phillips, 120 F.3d 227, 231 (11th Cir. 1997)(citing, Custis v. United States, 511 U.S. 485 (1994) United States v. Farris, 77 F.3d 391, 397 & n. 10 (11th Cir.), cert. den'd, 519 U.S. 896 (1996); McCarthy v. United States, 320 F.3d 1230, 1232 (11th Cir. 2003). No such showing has been made here.

Further, the Supreme Court has held that a federal prisoner who has failed to pursue available remedies to challenge a prior conviction (or has done so unsuccessfully) may not collaterally attack that conviction through a motion pursuant to 28 U.S.C. §2255 directed at the enhanced federal sentence. Daniels v. United States, 523 U.S. 374 (2001) (citing Custis v. United States, 511

34

U.S. 485, 493 (1994)(only prior convictions which may be collaterally attacked at sentencing were those obtained in violation of the right to appointed counsel); Johnson v. United States, 340 F.3d 1219 (11th Cir. 2003)(accord).

Based on the totality of the circumstances present here, the Undersigned finds the movant's sentences were lawfully imposed and thus procedurally barred from collateral attack here. Even if not procedurally barred, the court finds the sentences were lawful and thus any claim to the contrary warrants no federal habeas corpus relief. Contrary to movant's arguments here, all prerequisites for career offender sentencing have been met.

To the extent movant means to argue that his plea was not knowing and voluntary because it was premised on counsel's misadvice regarding his sentence exposure, that claim also warrants no relief. Even if this Court were to accept as true movant's allegations that before he entered the plea, defense counsel somehow conveyed to him that he would not face an enhanced sentence as a career offender, it cannot be said that such representation was either coercive or that it unduly influenced movant's decision. First, an erroneous estimation of the guidelines does not entitle movant to relief in that "[a]n erroneous estimate by counsel as to the length of sentence" is not "necessarily indicative of ineffective assistance." Beckham v. Wainwright, 639 F.2d 262, 265 (5th Cir. 1981).[11] Moreover, even when an attorney erroneously estimates his client's potential sentence, the movant must satisfy the prejudice requirement of Strickland by showing that "there is

---

[11]The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981, and all Fifth Circuit Unit B decisions rendered after October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59, 106 S.Ct. at 370; <u>United States v. Stumpf</u>, 827 F.2d 1027, 1030 (5th Cir. 1987); <u>see also</u>, <u>United States v. Pease</u>, 240 F.3d 938, 940-42 (11th Cir. 2001)(rejecting argument by defendant sentenced as a career offender that her plea was not knowing and voluntary because he had relied on counsel's prediction that her potential sentence under the plea agreement would be anywhere from five to ten years); <u>Carranza v. United States</u>, 508 Fed.Appx. 873 (11th Cir. 2013); <u>United States v. Arvanitis</u>, 902 F.2d 489, 494-95 (7th Cir. 1990)(no ineffective assistance where claim based only on inaccurate prediction of sentence). Nowhere does the movant indicate that he would not have pleaded guilty and would have instead insisted on proceeding to trial. Rather, he seeks only to "plea anew," so that his enhancement as a career offender can be removed, and he can be resentenced without the career offender designation.

Nevertheless, the movant acknowledged during the Rule 11 proceeding that, pursuant to the applicable statute, he was facing a 5-year minimum and up to a 40-year maximum term of imprisonment for violation of §841(b)(1)(B). Further, the movant specifically agreed that the type of drug involved was cocaine base, and the quantity attributable to him was more than 20 grams, but less than 35 grams. The change of plea proceeding confirms movant was aware and did plea to the Indictment charging him with a specific drug quantity. Regardless, even if movant had not agreed to the quantity, and further assuming that no exact quantity had been charged in the Indictment, the movant still faced a term of 20-years imprisonment as to each offense of conviction, pursuant to 28 U.S.C. §841(b)(1)(C). He received a sentence significantly below the statutory maximum for a drug offense, where the quantity is

36

neither alleged, admitted, nor proven beyond a reasonable doubt. Of course, none of those instances are applicable here as the movant agreed and admitted to the nature and quantity of the drugs involved.

Consequently, the law makes it clear that a defendant's sworn representations, as well as representation of his lawyer and the prosecutor, and any findings by the judge in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 73-74. See also United States v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005)("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any §2255 motion that necessarily relies on allegations that contradict the sworn statements.").

Here, movant has not shown a reasonable probability that he misadvised or misinformed as to the nature of the charges and his sentence exposure in order to induce him to enter his plea, and movant's allegations here are directly refuted by the Rule 11 representations made by him under oath. Thus, he cannot now contend that his guilty plea was in reliance upon some alternative characterization of his sentence exposure or advice given to him by his counsel. His self-serving statements that he was misadvised by counsel regarding his sentence exposure is wholly conclusory with no support whatever in the record, not to mention incredible.[12]

---

[12]See generally United States v. Jones, 614 F.2d 80, 81-82 (5th Cir. 1980)(district court justified in dismissing section 2255 movant's claims when movant presented only conclusory allegations to support claims). See also Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991)(recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)).

Further, even if we assume, without deciding, that before the plea proceeding it was in some way conveyed to movant that he was to receive a particular lesser sentence as he suggests here, movant's reliance on his attorney's erroneous prediction of a more lenient sentence is not sufficient to render a guilty plea involuntary. See Stumpf, 827 at 1030. See also United States v. Harmon, 139 F.3d 899 (5th Cir. 1998)(finding that the defendant could not "claim that his guilty plea was involuntary based upon his attorney's erroneous prediction about the length of the sentence"). As the Fifth Circuit explained in Daniel v. Cockrell, 283 F.3d 697 (5th Cir. 2002):

> A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands. Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate prediction that a lesser sentence would be imposed.

Daniel, 283 F.3d at 703.

It also cannot be overlooked that the entry of the guilty plea was clearly in the best interest of the movant. Because of the plea negotiated by defense counsel, movant benefitted from a three level reduction to his base offense level for acceptance of responsibility, but more importantly, the government also agreed not to file an 851 enhancement which would have increased movant's sentence exposure significantly. Had he proceeded to trial and been found guilty, movant's exposure upon conviction would have been significantly greater. He also may not have been eligible for a

38

reduction in his guideline range based on acceptance of responsibility. On the record before this court, movant has not alleged, let alone demonstrated here, that but for counsel's errors, he would not have pled guilty but would have gone to trial. <u>Hill</u>, 474 U.S. at 56-59.

It bears mentioning that where movant swore under penalty of perjury at the change of plea proceeding that no one had threatened, coerced, or forced him into entering a guilty plea, there is a strong presumption that his representations are true. <u>United States v. Medlock</u>, 12 F.3d 185, 187 (11th Cir. 1994); <u>see also</u> <u>United States v. Rogers</u>, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."). Under these circumstances, movant has not demonstrated that the arguments, as suggested be movant here, would have altered the outcome of the proceedings. Further, movant has not demonstrated bias or coercive behavior by the court during any of the proceedings. Therefore, under the totality of the circumstances present here, movant is entitled to no relief on any of his claims.

Moreover, movant has not overcome the presumption that his statements under oath at the Rule 11 proceeding were true and correct. <u>See generally</u> <u>United States v. Clayton</u>, 447 Fed.Appx. 65 (11th Cir. 2011) (defendant received close assistance of counsel where, during plea colloquy, defendant "confirmed that he had discussed the charges, plea agreement, and guidelines with his lawyer, had been given adequate time to consult with his lawyer, and was satisfied with his lawyer's representation," and had not "overcome the strong presumption that statements made during the plea colloquy are true"); <u>United States v. Price</u>, 139 Fed.Appx. 253 (11th Cir. 2005) (no abuse of discretion in denying motion to

withdraw guilty plea where plea hearing transcript "makes clear that the district court went through Price's rights with him, that Price understood those rights, that Price was satisfied with his counsel, and that—despite any factual disputes—Price persisted in pleading guilty" and where hearing transcript included defendant's confirmation "that he had consulted his counsel about how to proceed and that he had been 'extremely' satisfied with his counsel's representation").

The record thus reveals that movant is not entitled to relief on any of the claims presented as it is apparent from the extensive review of the record above that movant's guilty plea was entered freely, voluntarily and knowingly with the advice received from competent counsel and not involuntarily and/or unknowingly entered, as now claimed by him. See Boykin v. Alabama, 395 U.S. 238, 243 (1969); Brady v. United States, 397 U.S. 742, 748 (1970).[13] See also Hill v. Lockhart, supra; Strickland v. Washington, supra. 466 U.S. 668 (1984). Further, as noted above, his enhanced sentence as a career offender was proper, therefore, no showing has been made that any argument in this regard during the penalty phase of his case would have resulted in a different outcome, i.e., a lower sentence.

It should further be noted that this court has considered all of the movant's arguments raised in his §2255 motion. (Cv-DE#s1,14,15). See Dupree v. Warden, 715 F.3d 1295 (11th Cir.

---

[13]It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. Mabry v. Johnson, 467 U.S. 504, 508 (1984).

2013)(<u>citing</u> <u>Clisby v. Jones</u>, 960 F.2d 925 (11th Cir. 1992)). For all of his claims, movant has failed to demonstrate he is entitled to vacatur of his convictions and sentences. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed herein, the claim was considered and found to be devoid of merit, warranting no discussion herein.

Finally, when viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner due process of law. The petitioner therefore is not entitled to habeas corpus relief. <u>See Fuller v. Roe</u>, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), <u>overruled on other grounds</u>, <u>Slack v. McDaniel</u>, 529 U.S. 473, 482 (2000). <u>See also United States v. Rivera</u>, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the petitioner's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. <u>See Lockhart v. Fretwell</u>, 506 U.S. 364, 369-70 (1993).

## V.  <u>Evidentiary Hearing</u>

To the extent movant requests an evidentiary hearing on his claim, it should be denied. The movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. <u>See Higgs v. United</u>

States, 711 F.Supp.2d 479, 552 (D.Md. 2010)(citing Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), overruled on other grounds by 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992)). Further, a hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As discussed in this Report, the arguments raised are unsupported by the record or without merit. No evidentiary hearing is required.

## VI . Certificate of Appealability

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts. A §2255 movant "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. §2253(c)." See Fed.R.App.P. 22(b)(1). Regardless, a timely notice of appeal must still be filed, even if the court issues a certificate of appealability. See 28 U.S.C. §2255 Rule 11(b).

However, "[A] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. §2253(c)(2). To make a substantial showing of the denial of a constitutional right, a

§2255 movant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336-37 (2003) (citations and quotation marks omitted); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000); Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001).

After review of the record in this case, the Court finds the movant has not demonstrated that he has been denied a constitutional right or that the issue is reasonably debatable. See Slack, 529 U.S. at 485; Edwards v. United States, 114 F.3d 1083, 1084 (11th Cir. 1997). Consequently, issuance of a certificate of appealability is not warranted and should be denied in this case. Notwithstanding, if movant does not agree, he may bring this argument to the attention of the district judge in objections.

VII. Conclusion

It is therefore recommended that this motion to vacate be dismissed as time-barred; and, in the alternative, that it be denied on the merits. It is further recommended that any pending motions not otherwise ruled upon be denied as moot, that a certificate of appealability be denied, and the case closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 17th day of April, 2015.

43

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Michael Denson, <u>Pro Se</u>
      Reg. No. 75622-004
      F.C.I. - Manchester
      P.O. Box 4000
      Manchester, KY 40962

      Adrienne Rabinowitz, AUSA
      United States Attorney's Office
      500 South Australian Avenue
      Suite 400
      West Palm Beach, FL 33401
      Email: <u>adrienne.rabinowitz@usdoj.gov</u>